UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

In re: REDPEN PROPERTIES, LLC

PAMELA ALONSO, ET AL

VERSUS

SAMERA L. ABIDE, ET AL

CIVIL ACTION

NUMBER 11-702-DEW-SCR

## **RULING**

This matter is before the Court on the cross motions for summary judgment filed by Samera L. Abide, Trustee for the Estate of the Debtors,[1] by Plaintiffs Pamela Alonso and Cynthia O'Neal,[2] by RedPen Properties, LLC,[3] and by William and Carolyn Carroll.[4] For the reasons which follow, the Court finds that the motion for summary judgment by Samera L. Abide, Trustee for the Estate of the Debtors[5] should be granted. All other motions are denied.

## I.    Factual & Procedural Background

This case arises out of two adversary proceedings which were

---

[1] Rec. Doc. No. 68.

[2] Rec. Doc. No. 69.

[3] Rec. Doc. No. 72.    This document shall be stricken for the reasons stated in Section IV of this opinion.

[4] Rec. Doc. No. 73.

[5] Rec. Doc. No. 68.

Doc 20

consolidated in bankruptcy court. Proceeding 09-1096 (the "RedPen Adversary") was filed by Plaintiffs Pamela Alonso and Cynthia O'Neal against RedPen, LLC, and Samera Abide in her capacity as Trustee of the Estate of RedPen, LLC. Proceeding 09-1097 (the "Carroll Adversary") was also filed by Plaintiffs against William D. Carroll and Carolyn K. Carroll, parents of the Plaintiffs, and against Samera Abide in her capacity as Trustee for the Estate of William D. Carroll and Carolyn K. Carroll. In both proceedings, Plaintiffs seek declaratory and injunctive relief.

In the RedPen Adversary, Plaintiffs request a determination that certain movable property (often referred to as "the antiques") was transferred to them through certain documents which they contend were executed in 2005, three years prior to RedPen filing bankruptcy. This Act of Exchange purportedly gives all movables listed on Exhibit A to the Plaintiffs who, in turn, give RedPen 2500 units in itself. Plaintiffs assert their "unquestionable ownership" in said property. In the Carroll Adversary, Plaintiffs again seek a declaration of ownership over certain movable property which they contend was transferred to them by the Carrolls in a document also executed in 2005, prior to the Carrolls filing bankruptcy. This Donation Inter Vivos purportedly donates to Plaintiffs antiques and other "household goods," which are corporeal movables, along with 2500 membership units in RedPen, LLC, which are incorporeal movables.

Doc 20                                        2

The Trustee filed counterclaims in both adversary proceedings seeking her own determination as to the ownership of the movable property subject to the 2005 Donation Inter Vivos and 2005 Act of Exchange. The Trustee contends that both documents contain vices and defects as to form and substance which render them absolute nullities under Louisiana law. The Trustee moves for summary judgment finding that both documents are nullities and the movable property is owned by one or both of the bankruptcy estates.

For years, these matters were pending before the bankruptcy court as the parties engaged in discovery, depositions, and motion practice. A trial date was set by the bankruptcy court in this matter; however, following the United States Supreme Court decision of *Stern v. Marshall*,[6] the bankruptcy court ordered the parties to brief the issue of jurisdiction. The bankruptcy court ultimately reasoned that following *Stern*, it is more prudent for the bankruptcy court to send such matters to an Article III judge. Because resolution of this matter is a question of purely Louisiana law, the Court granted the Trustee's motion to withdraw reference.[7]

## II. Law and Analysis

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no

---

[6] 564 U.S. —, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

[7] Rec. Doc. No. 8.

Doc 20                                              3

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 3 of 34

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which

---

[8] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996);  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[11] *Id.* at 1075.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 4 of 34

there is a genuine issue for trial.[12]  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

## B.  The Donation Inter Vivos

A donation inter vivos (between living persons) "is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it."[17]  The act of

---

[12] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).

[13] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[14] *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[15] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[17] La. C.C. art. 1468.

Doc 20                                          5

donation must also identify the donor and the donee and describe the thing being donated.  These requirements are satisfied if the identities and descriptions are contained in the act of donation or are reasonably ascertainable from information contained in it, as clarified by extrinsic evidence.[18]  **The burden of proving the donation is on the donee, and proof must be strong and convincing.**[19] A donation inter vivos of corporeal or incorporeal things is null unless done in the form of an authentic act.[20]  "Although a donation may be valid as to form, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation."[21]  A codal exception to this general rule is that a manual gift, that is, the giving of corporeal movable effects, accompanied by real delivery, is not subject to any formality.[22] For a donation inter vivos, delivery is defined as "relinquishing control or dominion over property and placing it within the

_____

[18] La. C.C. art. 1542.

[19] *In re Succession of Jones*, (La. App. 2 Cir. 6/4/08), 986 So.2d 809, 810, *citing Butler v. Reddick*, 431 So.2d 396 (La. 1983); *Succession of Woolfolk*, 225 La. 1, 71 So.2d 861 (1954)(emphasis added).

[20] La. C.C. art. 1536.

[21] *Fogg v. Fogg*, 571 So.2d 838, 841-42 (La. App. 3 Cir. 1990), *writ denied*, 575 So.2d 372 (La. 1991).

[22] La. C.C. art. 1539.

Doc 20                                    6

dominion of the donee, irrevocably."[23]  Thus, where a donee fails

to prove donative intent and actual divestment or delivery, the

donation is null and void.

### 1.   Form of Donation

Plaintiffs argue the Donation Inter Vivos is an authentic act

which is self-proving, and that the burden is on the Trustee to

prove otherwise. However, this assertion is contrary to applicable

jurisprudence holding that "[t]he burden of proving the donation is

on the donee, and proof must be strong and convincing."[24]

The Trustee contends the Donation Inter Vivos which

purportedly gifts to Plaintiffs several antiques and household

goods along with 2500 membership units in RedPen is an absolute

nullity because it is not in proper form.   Because the 2500

membership units in RedPen are incorporeal movables, they cannot be

considered a manual gift and require an authentic act for their

transfer.   An authentic act is a writing executed before a notary

public in the presence of two witnesses, signed by each party

executing, and signed by each witness and the notary public.[25]

The Trustee argues that she has sought the **original** Act of

---

[23] *Dastugue v. Fernan*, 95-394 (La.App. 5 Cir. 10/18/95), 662 So.2d
538, 541, *citing Brown v. Brown*, 93-1105 (La.App. 3 Cir. 3/6/94),
635 So.2d 255, *writ denied*, 94-1667 (La.10/28/94), 644 So.2d 649;
*Succession of Serio*, 597 So.2d 91 (La.App. 4 Cir.1992), *writ
denied*, 600 So.2d 677 (La.1992).

[24] *See supra* note 19.

[25] La. C.C. art. 1833.

Doc 20                                7

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 7 of 34

Donation through discovery for several years and it was never provided. This document was allegedly recorded by the Plaintiffs and the Carrolls on October 11, 2011, in the public records of the Ascension Parish Clerk of Court. The Plaintiffs and Carrolls aver that this recorded document is the original Donation Inter Vivos which transferred to Plaintiffs ownership of the property in "Exhibit B" and 2500 units of ownership in RedPen. The recorded donation consists of 13 pages: 2 pages of the donation inter vivos and 11 pages identified as Exhibit B.

The Trustee argues in support of her motion for summary judgment that substantial evidence exists which questions the authenticity of the recorded 2005 Donation Inter Vivos such that Plaintiffs cannot carry their burden of proving that this donation is an authentic act. First, the Trustee points to the fact that, if the recorded 2005 Donation Inter Vivos is in fact the original as Plaintiffs and the Carrolls testified before this Court, then all other copies and "true" copies which Plaintiffs and the Carrolls have represented to the Court and the Trustee during the course of this litigation should be identical, especially with respect to the "True Copy" produced by the Plaintiffs and Carrolls months before the original was recorded. On the contrary, the record is replete with different versions of this document.

Trustee's Exhibit D-1, attached as an exhibit to Plaintiffs' pleadings in the RedPen Adversary proceeding in 2009, did not

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 8 of 34

include an Exhibit B, which is the description of the property. Also, the first page of this document is cut off rendering it incomprehensible. Trustee's Exhibit D-2 is a fax allegedly sent to the Trustee by Carolyn Carroll on December 2, 2009, which is a handwritten Exhibit B to the Donation Inter Vivos. Trustee's Exhibit D-4 is a typed Exhibit 1 which Plaintiffs submitted in the RedPen Adversary which purports to be the list of movable property donated in the Donation Inter Vivos.

Trustee's Exhibit D-5 purports to be a "true copy" of the original June 4, 2005 Donation Inter Vivos. This document was true copied by Thomas Frierson, attorney for RedPen, on February 22, 2010. However, there are several differences between this "true copy" and the alleged original donation filed in Ascension Parish. First, the signature pages on the two documents are different. Second, the handwritten Exhibit B in the "true copy" consists of 6 pages. Third, Frierson also true copied a typed 6 page Exhibit B which is the same as Exhibit 1 referenced in Trustee's Exhibit D-4 which was not prepared until December of 2009. The Trustee also points to the testimony of Frierson at the April 19, 2012 hearing before the Court where he admitted that he did not have the original document to compare to the copy of the donation which he certified as a "true copy." He also could not recall "true copying" the document.

Trustee's Exhibit D-6 reveals that, not only does the recorded

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 9 of 34

11 page Exhibit B fail to match the Frierson "true copied" Exhibit B, it also fails to match the 6 page Exhibit B by attorney Pamela Magee in Document Number 79 in Case No. 08-10933. Trustee's Exhibit D-8, which is an unsigned and incomplete version of the donation turned over by Frierson upon the Court's order, also has variations in the ink and words on the document along with a 4 page Exhibit B which differs from the 6 page and 11 page versions of Exhibit B.

Throughout the duration of this protracted litigation, the Carrolls and Plaintiffs have never produced the original Donation Inter Vivos to the Trustee or the Court. They have only produced purported copies, alleged "true copies," and alleged "certified" true copies, but never the originals which should have been in their custody prior to the recordation in October of 2011. The numerous versions of what they claim to be the same document prove that the Plaintiffs cannot establish with admissible evidence that the 2005 Donation Inter Vivos was an authentic act, which is an essential element of their case. Additionally, the various versions of these documents and the failure to produce an original which would have been in their possession prior to October of 2011 lead the Court to seriously question the legality of the actions taken by the Plaintiffs and the Carrolls.

Most disturbing is the production by Thomas Frierson of his "Carroll files" which reveal evidence that strongly suggests that

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 10 of 34

the 2005 Donation, as well as the Act of Exchange, were created in 2009, four years after the purported June 4, 2005 execution date and only **after** the ownership of the movables became an issue in the bankruptcy proceedings. Thus, the Court finds there is strong and convincing evidence that the purported original 2005 Donation Inter Vivos was falsely dated and created for the purpose of defrauding the bankruptcy court.

The Trustee also offers Exhibit T-220 which shows that on July 25, 2009, Plaintiff Alonso faxed to her mother Carolyn Carroll a list of the Carrolls' various bankruptcy filings. On this document, the RedPen and Carroll cases are highlighted in pink. Frierson's notes in black ink on this fax state: "Exhibit B donation to girls, Exh A act of exchange and 6/4/05." Attached to this fax is a "sticky" note containing handwritten notes of Carolyn Carroll in blue ink which read: "1. Transfers from RedPen LLC to 3 children: Pamela Carroll Alonso. William Carroll, III (name stricken in black ink), Cynthia Carroll O'Neal. 2. The enclosed Exhibit A will be revised to create 3 or more lists to possibly include other family members. 3. I will provide revised lists ASAP." Items 2 and 3 are stricken with black ink. The Trustee contends that the Alonso Fax and Carolyn Carroll's note read in conjunction with Frierson's file notes strongly suggest that Carolyn Carroll was instructing Frierson to fabricate Transfer Documents which would transfer ownership in the antiques to her

Doc 20                                  11

children. The Trustee also notes that the June 4, 2005 date was more than three years before the filing of the RedPen bankruptcy petition, which further evidences the intent of the Carrolls and Plaintiffs to circumvent the three year peremptive period for bringing a revocatory action.

Plaintiffs and the Carrolls contend the "sticky note" did not pertain to the document to which the Trustee has attached it. Plaintiffs and the Carrolls also suggest that the Trustee or someone in her office placed the sticky note onto the document in an attempt to manufacture evidence against their interests.[26] While the Court finds no merit to this claim, the Court notes it would reach the same conclusion without consideration of the "sticky note" evidence. With or without this document, the evidence is overwhelming that the Donation Inter Vivos is not in proper form.

For the reasons set forth above, the Court finds that Plaintiffs have not offered, and cannot offer, admissible evidence to prove that the Donation Inter Vivos is an authentic act.

### 2. Description of Thing Donated

Louisiana Civil Code article 1542 requires that an act of donation describe or identify the property being donated. In this case, the Donation Inter Vivos refers to "Exhibit B" as the property donated. Strangely, nothing in the Exhibit B included with the alleged original Donation Inter Vivos refers back to the

---

[26] Rec. Doc. No. 95-2.

Doc 20                           12

donation. Further, like the Donation Inter Vivos discussed above
in great detail, the record also contains several conflicting
versions of Exhibit B. The Trustee contends this failure to
properly describe or identify the thing(s) being donated is also a
defect to the donation. Plaintiffs make no attempt to explain why
so many variations exist; rather, they challenge the validity of
the Trustee's exhibits and argue simply that formatting is to blame
for some of the differences.

The Court finds that the property allegedly donated was not
properly or adequately described under Louisiana law such that it
could be clearly and properly identified. This is also a serious
defect in the Donation Inter Vivos.

### 3. Donative Intent and Actual Divestment

The Trustee argues that, even if Plaintiffs could prove that
the 2005 Donation Inter Vivos is an authentic act and in proper
form, the donation still fails to meet the substantive requirements
under Louisiana law to be considered valid because the donors
(William and Carolyn Carroll and/or RedPen) lacked the intent to
"presently and irrevocably" divest themselves of the movable
property.

At the inception of the 2008 personal bankruptcy petition by
the Carrolls, some three years after the alleged execution of the
2005 Donation Inter Vivos, the Carrolls maintained corporeal
possession of all of the antiques, including those listed on

Doc 20                                    13

Exhibits A and B. Under Louisiana law, they are presumed to be the owners at that time.[27] In fact, at all times relevant to these proceedings, the antiques have been in the sole possession of the Carrolls. The Trustee argues that the irrefutable facts show that the Carrolls have continuously exercised possession, use and control over these antiques before, on, and since June 4, 2005. As such, the Carrolls are the presumed owners of the movable property and this presumption cannot be rebutted by the Plaintiffs.

Plaintiffs contend there is nothing wrong with leaving the movables *in situ*.[28] Plaintiffs also contend that RedPen would have had to rent storage space to house the movables and it simply made more sense to leave the movables with the Carrolls. Plaintiffs further state that they should not be penalized because they chose to "avail themselves of a secure and free storage space for those movables."[29] The problem with this argument is that donative intent and actual divestment are clear requirements to prove a donation, and Plaintiffs fail to present any jurisprudence supporting their claims.

Curiously, when the Carrolls filed schedules in the current bankruptcy case, they indicated they were not in possession of items belonging to a third party. As the Trustee notes, these

---

[27] *See* La. C.C. art. 530.

[28] Rec. Doc. No. 95, p. 12.

[29] *Id.* at 13.

Doc 20                           14

assertions were made under penalty of perjury, and the Court and parties relied on these sworn representations as the truth. These representations were made well after the donation was purportedly executed on June 4, 2005. If the Carrolls had truly intended to donate the property back in 2005, why then did they fail to indicate in 2008 that many of the antiques in their possession belonged to a third party? Pamela Magee, who was the Carrolls' former bankruptcy attorney, testified before this Court at the April 19, 2012 hearing.[30] Magee testified that she confirmed with Carolyn Carroll the contents of the schedules and ownership of the antiques before the schedules were filed, and that Carolyn Carroll reviewed and revised things that were incorrect and then approved the schedules and statements of financial affairs as filed.[31] These schedules and statements clearly reflect that the Carrolls owned no property belonging to another, but used household goods belonging to RedPen.[32]

The Trustee cites *Succession of Simpson* in support of her motion.[33] In *Simpson*, Simpson had executed an act of donation, in

---

[30] The Trustee has a pending motion to for contempt (Rec. Doc. No. 75) for Magee's failure to abide by this Court's order to turn over the related Carroll documents.

[31] *See* Exhibits T-223, T-217, T-218 & T-69, Schedule B, item 4 and SOFA, Ques. 14).

[32] T-42.

[33] 311 So.2d 67 (La. App. 1975), *writ denied*, 313 So.2d 839 (La. 1975).

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 15 of 34

authentic form, giving her house to some of her children. However, Simpson continued living in the house and took no action to divest herself of it. At the time of her death, the children to whom Simpson donated the house sought a declaratory judgment that the they alone, and not the excluded siblings, owned the house. The court rejected this contention, holding that "although Mrs. Simpson may have had the intent to donate, she did not intend to divest herself of her home until her death."[34] Thus, because the donation was not intended to actually take place until Simpson's death, the donation was not a valid donation inter vivos under Louisiana law.

Likewise, in *Anderson v. Aetna Life & Cas.*, also relied upon by the Trustee, the court found that the homeowners had properly executed an authentic act of donation of their home to a trust but lacked present and irrevocable donative intent.[35] The court noted several factors which indicated a lack of donative intent, including the homeowners personally claiming the homestead exemption on the home and personally paying ad valorem taxes on the property along with utilities, insurance, and repairs. The homeowners had also contracted for substantial and expensive renovations, listed themselves and the insured on the homeowners' insurance policy, claimed interest payments on loans as deductions

---

[34] *Id.* at 73.

[35] 535 So.2d 1070 (La. App. 2 Cir. 1988), *writ denied*, 536 So.2d 1256 (La. 1989).

Doc 20                        16

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 16 of 34

to their personal income tax returns, and listed the property as personal assets on financial statements. The court found "numerous actions on the part of the Andersons demonstrating that they never viewed the house as belonging to the trusts, but instead, continually dealt with the house as their personal property."[36] Thus, the court held the Andersons lacked the donative intent to presently divest themselves of ownership of the house rendering the donation invalid.

The Trustee contends the same analysis and reasoning in *Simpson* and *Anderson* apply in the present case. Although the Carrolls allegedly executed a Donation Inter Vivos in 2005, their actions belie any donative intent to presently and irrevocably divest themselves of the movable property. Following the donation, the Carrolls continued to exercise possession and control over the antiques and use them as their own property. The Carrolls also made sworn representations to the bankruptcy court that they did not possess property belonging to a third party. If the Carrolls themselves believed that the 2005 Donation Inter Vivos was valid, they would not have filed a bankruptcy petition in 2008 and failed to declare on their schedules that they possessed substantial property belonging to their daughters. There is no genuine issue as to this material fact. Further, as the Plaintiffs bear the burden of proving the validity of the donation, the Trustee

---

[36] *Id.* at 1072.

Doc 20                          17

contends Plaintiffs cannot and have not presented a shred of evidence to rebut the facts in the record on this issue.

The Court must find for the Trustee on this issue. Had the Carrolls actually believed in the validity of the Donation Inter Vivos, they would have clearly disclosed in the bankruptcy proceedings that such property belonged to their daughters. Furthermore, even if the Court did not consider the evidence of multiple versions of the relevant documents as Plaintiffs have urged the Court, Plaintiffs' motion for summary judgment would still be denied under the reasoning set forth in *Simpson* and *Anderson*. Had Plaintiffs proved the donation to be an authentic act in proper form, they have still failed to carry their burden of showing that donative intent and actual divestment were present in this donation as the courts required in *Simpson* and *Anderson*.

### C. Judicial Estoppel

The Trustee also avers that the doctrine of judicial estoppel applies under the facts of this case preventing the Carrolls and Plaintiffs from taking a position now in this proceeding that contradicts their prior position in the bankruptcy proceedings. The Fifth Circuit has noted that, in determining when to apply the doctrine of judicial estoppel, courts look primarily for the following: "(1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 18 of 34

accept the prior position; and (3) the party did not act inadvertently."[37] Moreover, "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset."[38] The Court finds that all three prongs of this test are satisfied in the case at bar.

The Plaintiffs and the Carrolls have yet to offer any explanation about the Carrolls' failure to make such disclosures in 2008 if they truly believed their daughters were the owners of such a vast amount of property. Likewise, they have completely ignored the following and most obvious question: if original documents were in the possession of the Carrolls and/or Plaintiffs in 2011 prior to being formally filed, why were these documents never produced to the Trustee or the Court despite many requests?

Considering the arguments set forth above concerning the Donation Inter Vivos, the Court finds that the evidence in this case overwhelmingly confirms that the 2005 Donation Inter Vivos is not an authentic act, not in proper form, not properly described under Louisiana law, and that the Carrolls lacked donative intent to presently and irrevocably divest themselves of the antiques at the time of the purported donation. Furthermore, the Court applies

---

[37] *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005), *citing Browning Mfg. V. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 206-207 (5th Cir. 1999).

[38] *Id.* at 600

Doc 20                                        19

the doctrine of judicial estoppel in this case precluding the Carrolls from now taking a position in this legal proceeding which is so contrary to the legal position they clearly took in the bankruptcy proceedings. It would be a grave miscarriage of justice to allow the Carrolls and Plaintiffs to achieve their purposes after what strongly suggests an attempt to defraud the bankruptcy court and their creditors.

### D. Act of Exchange

The Plaintiffs also claim ownership of certain movables listed in Exhibit A to the 2005 Act of Exchange between themselves and RedPen. This document purportedly exchanges all movables described in Exhibit A in return for the Plaintiffs giving RedPen 2500 units in itself. As with the 2005 Donation Inter Vivos, the Trustee contends this Act of Exchange is not an authentic act because there are too many variations in copies of the Exchange and the Exhibits to the Exchange to attribute any reliability to the alleged "original" Act of Exchange. Further, the Trustee argues that RedPen has not produced any company documents authorizing the Exchange. Finally, the Trustee contends this exchange is actually a simulation under Louisiana law since the Exchange fails to express the true intent of the parties.

### 1. Exchange and Simulation Under Louisiana Law

Under Louisiana law, an exchange is a contract whereby each party transfers to the other the ownership of a thing other than

Doc 20                          20

money. Ownership of the things exchanged is transferred between the parties as soon as there is agreement on the things, even though none of the things have been delivered. If it is the intent of the parties that the transfer of ownership will not take place until a later time, then the contract is a contract to exchange.[39] Each of the parties to a contract of exchange has the rights and obligations of a seller with respect to the thing transferred by him and the rights and obligations of a buyer with respect to the thing transferred to him.[40]

Under Louisiana Civil Code article 2025, a contract is a simulation when, by mutual agreement, it does not reflect the true intent of the parties. "A simulation may be relative or absolute; the latter taking place when the parties intend that the contract produce no effect between them. This would occur if the parties contract for a sale but intend that the vendor remain the owner. A relative simulation occurs when the parties wish for the act to produce effects between them, but not the effects stated in the contract."[41]

Whether an act of exchange is a simulation is a question of contract interpretation.[42] "By definition, the issue of simulation

---

[39] La. C.C. art. 2660.

[40] La. C.C. art. 2661.

[41] *In re Carty*, 400 B.R. 63, 73 (W.D. La. 2008).

[42] *Matter of Zedda*, 103 F.3d 1195, 1205 (5th Cir. 1997).

Doc 20                                    21

involves a determination of whether the instrument under scrutiny is something other than what meets the eye."[43] Additionally, "[i]t follows necessarily that a proper and complete analysis of whether the [act of exchange] is a simulation turns of necessity on consideration of extrinsic evidence..."[44]

An absolute simulation is a contract intended to have no effects between the parties.[45] "In an absolute simulation, sometimes called a pure simulation or a non-transfer, the parties only pretend to transfer the property from one to the other, but in fact both the transferor and the transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed; that is, that no transfer had in fact taken place."[46]

There are two legal presumptions, one codal and one jurisprudential, that apply in situations where a party seeks to prove a simulation. The codal presumption expressed in Article 2480 provides that "when the thing sold remains in the corporeal possession of the seller, the sale is presumed to be a simulation, and, **where the interest of heirs and creditors of the seller is**

---

[43] *Id.*

[44] *Id.*

[45] La. C.C. art. 2026.

[46] *Ackel v. Ackel*, 2007 WL 1765561, *7 (La. App. 1 Cir. 6/20/07), *citing Peacock v. Peacock*, 28,324, pp. 5-6 (La.App. 2nd Cir.5/8/96), 674 So.2d 1030, 1033.

Doc 20                                          22

**concerned, the parties must show that their contract is not a simulation.** The presumption is applicable only where the vendor retains corporeal possession."[47] Louisiana courts have held that "[t]his is a strong legal presumption."[48]

Further, "[t]he jurisprudential presumption of simulation applies where the evidence establishes the existence of facts and circumstances that create a highly reasonable doubt as to the reality of the putative sale."[49] When either presumption exists, "the burden of proof shifts to the other party to the sale who may rebut the presumption by establishing a good faith transaction, resulting in a true alienation of ownership for consideration."[50]

Whether a transaction is simulated is a matter to be decided in the light of the circumstances of each case.[51] A simulation is proven "by indirect or circumstantial evidence since, by its inherent nature, a simulation often only admits of circumstantial proof."[52] A third person, not a party to an absolute simulation,

---

[47] *Id.*, *citing Peacock*, 28,324 at p. 6, 674 So.2d at 1033 (emphasis added).

[48] *Id.*, *citing Travelers Ins. Co. v. McArthur*, 175 So.2d 669, 671 (La.App. 1st Cir.1965).

[49] *Id.*, *citing Wilson v. Progressive State Bank & Trust Co.*, 446 So.2d 867, 869 (La.App. 2nd Cir.1984).

[50] *Id.*

[51] *Id.* at *8, *citing Milano v. Milano*, 243 So.2d 876, 879 (La.App. 1st Cir.1971).

[52] *Id.*, *citing Wilson*, 446 So.2d at 869.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 23 of 34

may attack an absolute simulation made in fraud of his interest.[53] "With regard to the standard of proof of fraud, La. C.C. art. 1957 provides that fraud need only be proven by a preponderance of the evidence, and that such proof also 'may be established by circumstantial evidence.' Circumstantial evidence, including highly suspicious facts and circumstances surrounding a transaction, may be considered in determining whether a fraud has been committed."[54]

The Trustee challenges the Plaintiffs' argument that under Louisiana Civil Code article 2660, the ownership of things exchanged is transferred between the parties as soon as there is an agreement on the things, even though the things have not been delivered. The Trustee points to Article 530 which provides that the possessor of corporeal movables is presumed the owner. It is the Trustee's position that when the movables remained in the possession of the Carrolls and/or RedPen, their ownership was presumed and the transfer was revealed to be a simulation. The Trustee argues:

> While the law imposes a strict rule of evidence in contests between the parties to an absolute simulation, where the controversy is between the transferee and the derivatives of the alleged transferor, the derivatives of the alleged transferor may have greater rights, such as

---

[53] *Id.*, *citing* La. C.C. art.2026, Revision Comments-1984, (c). *(See also Britton v. Williams,* 40,341, pp. 7-8 (La.App. 2nd Cir.10/26/05), 914 So.2d 1151, 1155-56.

[54] *Id.*, *citing Williamson v. Haynes Best Western of Alexandria,* 95-1725, p. 85 (La.App. 4th Cir.1/29/97), 688 So.2d 1201, 1239, *writ denied,* 97-1145 (La.6/20/97), 695 So.2d 1355.

Doc 20                                    24

the ability to use evidence other than a counterletter or interrogatories, than the transferor would have had. This occurs when the derivatives of the alleged transferor are creditors of that person. Here, the Trustee represents the creditors of the bankruptcy estates. The Plaintiffs and the Carrolls (while postured as defendants by the Plaintiffs) are aligned with the Plaintiffs.[55]

For the reasons which follow, the Court finds that the evidence in this case overwhelmingly reveals that this purported Exchange is in fact a simulation. Each of the Trustee's contentions are addressed below.

## 2. Versions of the Act of Exchange

The Trustee has presented evidence of several versions of the purported 2005 Act of Exchange. The Trustee contends the first time she saw this document, it was erroneously filed in bankruptcy case No. 08-10933 as an exhibit to the Carroll's opposition to the Trustee's application to employ an auctioneer.[56] The Trustee presents a copy of what she contends is the second version of the Exchange, erroneously attached to the complaint in adversary proceeding No. 09-1096.[57] The Trustee argues this version, consisting of 2 pages, is incomplete as part of page 1 is missing. The Trustee contends the third version of the Exchange was produced

---

[55] Rec. Doc. No. 68-1, p. 35 (footnotes omitted).

[56] This version of the Exchange is attached to the Trustee's Motion for Summary Judgment as Exhibit E-1. The Trustee acknowledges that she was never intended to see this document which was later stricken from the bankruptcy records.

[57] Trustee's Exhibit E-2.

Doc 20                                   25

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 25 of 34

to her in March of 2010 in response to discovery requests. This document was labeled a "true copy" made on February 22, 2010 by Mr. Frierson.[58] The Trustee argues Frierson could not have been copying this version from the second version based on the differences in the redacted information in paragraph 3 of each version. This third version consists of six pages, a two-page transfer document and a four-page exhibit designated as Exhibit A. The Trustee contends that if Frierson used the first version to certify the 2010 True Copy, the redaction differs in each document.

As with the Donation Inter Vivos, the Trustee questions why, if the original Exchange could be presented to Frierson to be "true copied," could the original not be produced to the Trustee as requested in discovery. Further, the Trustee questions why the original Exchange was never produced prior to its recordation with the Ascension Parish Clerk of Court on October 11, 2011. The Trustee contends the recorded Exchange is actually the fourth version,[59] consisting of 6 pages and differing from the 2010 True Copy version because it includes the social security numbers of the Plaintiffs. Also, while the recorded copy contains an Exhibit A, it fails to include a RedPen company resolution or unanimous consent of members filed in the public record.

The Trustee also suggests that a fifth version of the Exchange

---

[58] Trustee's Exhibit E-3.

[59] Trustee's Exhibit E-4.

Doc 20                          26

was filed into this Court's record on April 20, 2012.[60] Although this document has the recordation information for Ascension Parish, the Trustee argues it is not the same document pulled from the electronic records of the Ascension Parish Clerk of Court. Finally, the Trustee posits that a sixth version was produced by Mr. Frierson in the files he submitted to the Court.[61] The Trustee contends this document is unexecuted, incomplete and marked "4th" in blue ink.

According to the Trustee, none of the six versions of the Exchange sufficiently describe Exhibit A, such that the property to be transferred can be adequately identified. The Trustee also challenges the authenticity of the Exchange due to the numerous versions in existence.

The Court has reviewed the evidence submitted by the parties. The Court agrees that Plaintiffs have failed to show that the Exchange is an authentic act in proper form as there are too many differing versions in the record to rely on any of them as authentic. Likewise, the Carrolls and Plaintiffs failed to ever produce an original Act of Exchange when one should have been in their possession prior to being recorded in October of 2011.

---

[60] Trustee's Exhibit E-5 (The Trustee filed an unredacted copy into the record in accordance with the Court's order; however, Plaintiffs' filed copy is an unredacted version - Rec. Doc. No. 46).

[61] Trustee's Exhibit E-6.

Doc 20                                    27

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 27 of 34

### 3. Company Authority

The Trustee contends that, despite the language in every version of the Exchange that RedPen appears through its manager William D. Carroll, Jr. "duly authorized pursuant to the resolution of the members of the LLC," she has never been presented with a document demonstrating proper company authority for the 2005 Exchange. Although there is no legal requirement to record the company resolution with the Exchange, once evidence of authority has been requested, it must be provided. The Plaintiffs and Carrolls have failed to produce an original document showing company authority despite several discovery requests and two court orders to turn over such documents. The Plaintiffs did file into this Court's record a document purporting to be a unanimous consent of members and a company resolution; however, the originals of these documents have not been produced and the testimony of Carolyn Carroll suggested to the Court that the originals may not even exist. Thus, the Trustee contends Plaintiffs cannot carry their burden of proof based on the following: (1) the RedPen Manager lacked proper company authority to make the 2005 Exchange; (2) Plaintiffs have failed to produce the original alleged June 1, 2005 company documents which would grant company authority; (3) the company documents produced are not in proper form and not authentic acts; and (4) strong evidence suggests these company documents are fabrications created after the bankruptcy proceedings.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 28 of 34

The Trustee states that she requested all RedPen company records on two occasions as early as February of 2010. What the Trustee was provided was represented to be all RedPen company documents. The purported June 1, 2005 company documents authorizing the Exchange were not in the RedPen file produced. When a RedPen corporate binder was requested, Carolyn Carroll swore under oath at her trial deposition that there were no company resolutions or minutes of RedPen other than that previously provided.[62] The Trustee contends that the Plaintiffs and Carrolls only filed a supplement to the Pre-Trial Order containing this alleged June 1, 2005 company resolution and alleged June 1, 2005 unanimous consent of members authorizing the 2005 Exchange on March 6, 2012, after repeated admonitions by the Court about this lack of company authority in the record. Both Frierson and Pamela Magee testified that they did not create these documents for RedPen. Carolyn Carroll claimed that these documents were in the "side pocket" of the company binder; notably, this explanation is in direct contradiction to her August 2010 testimony that there were no other company documents. Plaintiffs and the Carrolls provide no explanation for this alleged lack of company authority.

The Trustee also contends the 2005 Exchange is null because William D. Carroll, Jr., as Manager of RedPen, lacked authority to enter into the Exchange. RedPen operates under the First Amended

---

[62] Exhibit T-138, pp. 222:23-222:3 & Exhibit T-239.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 29 of 34

and Restated Operating Agreement of RedPen Properties, LLC, ("Operating Agreement") dated June 20, 2002, and executed by William Carroll and Carolyn Carroll on that date.[63] The Trustee contends that, pursuant to Article 4.2 of the Operating Agreement, the Manager did not have authority to engage in this transfer. Rather, the Trustee argues that unanimous consent was required by all members, which, by virtue of the purported June 4, 2005 Donation Inter Vivos, would have included Alonso and O'Neal since they allegedly received membership units in RedPen.

The Trustee also contends that because the 2005 Donation Inter Vivos is a nullity, the Plaintiffs never actually received 2500 units of ownership in RedPen which was to serve as consideration for Plaintiffs' receipt of the movables in the Exchange. In other words, since Plaintiffs did not have 2500 units to give, no value was exchanged for the movables; thus, the alleged Exchange falls outside of the Louisiana Civil Code's definition of an exchange. The Trustee further contends that RedPen cannot gratuitously donate its property under the Operating Agreement because of the contractual prohibition against partitioning company assets.[64] The Trustee concludes that because the 2005 Exchange must be viewed as a donation, it too must fail for the same reasons as the Donation Inter Vivos previously discussed. Because RedPen is no longer in

---

[63] Trustee's Exhibit T-6.

[64] Trustee's Exhibit T-6, Operating Agreement, Art. 4.3D.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 30 of 34

control of its own assets as a result of the bankruptcy, the defects in the purported donation cannot be cured.

The Trustee contends the filing date of the 2005 Exchange is also highly suspicious. The Trustee suggests that because they were not filed until six years **after** their alleged execution date, and then **only** after the issue of the ownership of the movables had been called into question in this proceeding, there is a strong suggestion that these documents were not created on June 4, 2005. Also suspicious is the fact that the originals, which would have been in the Carrolls' possession prior to the recordation, were never produced before the filing date despite numerous requests.

There is a plethora of evidence in the record which supports the argument that the Act of Exchange is not in authentic form and is a simulation producing no effects between the parties. Under Louisiana law, as possessors of the property at the time of the bankrupcty proceedings, the Carrolls and RedPen were presumed to be the owners of said property. Plaintiffs have failed to carry their burden of rebutting this presumption. And contrary to Plaintiffs' assertions, once this exchange was challenged by a third party, as the Trustee has done here, the burden shifted to the Plaintiffs to prove the Exchange was not a simulation. The Court also finds that RedPen lacked proper company authority to enter into the Exchange as set forth above in detail. Accordingly, the Trustee's motion for summary judgment is granted. All other motions for summary

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 31 of 34

judgment are denied.

### E.   Trustee's Claim

The Trustee contends that, because the possessor of a corporeal movable is presumed to be its owner under Louisiana law, and the Carrolls and/or RedPen have had sole and exclusive possession of the antiques at issue in the case at all dates relevant to this litigation and the bankruptcy proceedings, the Carrolls and/or RedPen are presumed to be the owners of the movable property.   The Trustee contends Plaintiffs have not, and cannot, present any admissible, competent evidence that would rebut this presumption.  Because the Trustee has shown that the movables were in possession of the Carrolls and/or RedPen when the bankruptcy proceedings were filed, the presumption of ownership attaches. Thus, the Trustee contends as trustee for the estate of the debtors, she is owner of all movables at issue in this litigation. The Court agrees for the reasons set forth above.

## III. Miscellaneous

The Motion for Personal Computer to Be Released[65] is granted. The Trustee shall turn over the Carrolls' computer within 10 days from the date of this ruling.   The Motion to Strike, or Alternatively, Motion *in Limine*[66] is denied as moot.  The Motion to

---

[65] Rec. Doc. No. 42.

[66] Rec. Doc. No. 56.

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 32 of 34

Compel[67] is denied for failure to serve a proper request for production of documents under the Federal Rules of Civil Procedure. The Motion to Strike Cross-Motion for Summary Judgment[68] is denied as moot. The Motion for Evidentiary Hearing[69] is denied. The Motion for Leave to File Memorandum in Opposition to Motion to Continue[70] and Motion for Leave to File Response to Memorandum and Motion to Strike[71] are both denied. The *Ex Parte* Motion for Thomas J. Frierson to withdraw as attorney[72] is granted; however, Mr. Frierson is still ordered to show cause why he filed papers with the Court when suspended from the Middle District of Louisiana and why he filed briefs on behalf a party to this litigation when he is a material witness in the matter.

All other motions[73] are hereby referred to August 12, 2013, which was the trial date in this matter. The trial date is converted to a Show Cause Hearing. The Court will address at that time the lack of professionalism and ethics exhibited by the parties and the contention that Pamela Magee should be held in

---

[67] Rec. Doc. No. 64

[68] Rec. Doc. No. 76.

[69] Rec. Doc. No. 98.

[70] Rec. Doc. No. 117.

[71] Rec. Doc. No. 118.

[72] Rec. Doc. No. 130.

[73] Rec. Doc. Nos. 75, 99, & 100.

Doc 20                                      33

contempt for failure to comply with the Court's order to turn over documents.

## IV.  Conclusion

For the reasons set forth above:

The Trustee's motion for summary judgment[74] is granted.  The cross-motions for summary judgment of the Plaintiffs and the Carrolls are denied.  The Court strikes the cross-motion for summary judgment filed by RedPen, LLC[75] as it was filed by Thomas J. Frierson, an attorney not admitted to practice in the Middle District of Louisiana and also a material witness who testified in this case.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Baton Rouge, Louisiana, this 27th day of June, 2013.

DONALD E. WALTER, DISTRICT JUDGE
WESTERN DISTRICT OF LOUISIANA

---

[74] Rec. Doc. No. 68.

[75] Rec. Doc. No. 72.

Doc 20                              34

Case 3:11-cv-00702-DEW-SCR   Document 141   06/28/13   Page 34 of 34